Norine LUNSFORD, Plaintiff–
Respondent,

v.

Joshua DEATHERAGE, and Joshua
Deatherage Builders, LLC,
Defendants–Appellants.

No. SD 34525

Missouri Court of Appeals,
Southern District,
Division One.

Filed: May 10, 2017

Attorney for Appellants—Steven Privette of Willow Springs, MO

Attorneys for Respondent—Britton D. Jobe, Ryan D. Frazier of Springfield MO

DON E. BURRELL, J.

Appellants, Joshua Deatherage Builders, LLC ("Contractor") and Joshua Deatherage, challenge an order[1] denying

---

1. "The denial of a motion to compel arbitration is an appealable order even though it is not a final judgment." *Springleaf Fin. Servs., Inc. v. Shull*, 500 S.W.3d 276, 278 n.1 (Mo. App. S.D. 2016). Missouri's Uniform Arbitration Act ("UAA") is set forth in section

their motion to stay the November 2015 lawsuit filed by Norine Lunsford ("Homeowner") and compel the parties to resolve the dispute via arbitration. *See* section 435.440.1(1). Count 1 of Homeowner's petition alleges that Contractor breached the parties' "CONSTRUCTION CONTRACT" ("the contract") to build an addition to Homeowner's house in Mountain Grove. Count 2 claims that Appellants' negligent performance of construction services caused "severe financial damages to [Homeowner]."

Appellants' point on appeal claims the trial court erred in denying arbitration because "the issues in dispute fall within the scope of the arbitration agreement included in [the contract]." Because the contract permitted Contractor to elect arbitration of claims brought by either party, we reverse the decision of the trial court to deny Appellants' motion to stay as to Contractor, and we remand the case for further proceedings consistent with this opinion.

## Applicable Principles of Review and Governing Law

We review *de novo* the denial of a motion to compel arbitration. *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). "Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006); *see also Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431–32 (Mo. banc 2015).

## Evidentiary and Procedural Background

Homeowner's Count 2 claim for negligence avers, *inter alia*, that Appellants acted "[i]n furtherance of the [contract]"

by performing "certain construction services for [Homeowner] concerning a residential home addition[,]" but Appellants were "careless and negligent in providing construction and related services to [Homeowner.]" Homeowner invoked the contract as providing Appellants' "duty to ensure that the terms and specifications of the [contract] were carried out with the highest professional skill and knowledge, and in a satisfactory and workmanlike manner." Homeowner's petition incorporated Exhibit A as a purported copy of the contract.

Appellants responded to Homeowner's petition by filing an "**ELECTION TO REQUIRE BINDING ARBITRATION**" and a "**MOTION TO STAY PROCEEDINGS PURSUANT TO ARBITRATION CLAUSE IN CONTRACT**" ("the stay motion"). The stay motion also relied on Homeowner's Exhibit A as a correct copy of the contract, and each party relies on its content in their briefs. As a result, we presume the exhibit is a true and accurate copy of the contract. *Cf. Briar Road, L.L.C. v. Lezah Stenger Homes, Inc.*, 321 S.W.3d 488, 493 (Mo. App. S.D. 2010) (based in part on the "parties' apparent concessions that [a particular exhibit not in the record was] the original assignment of rights document," the opinion presumed that a purported copy of the original attached to a pleading was an accurate copy).

The contract is primarily preprinted, but it contains various blanks designed to receive additional information. For instance, Contractor is identified in the preprinted text as the contractor, while Homeowner is identified using hand-written text in the "Client" blank. The contract provides a blank for a signature by Homeowner as the client, and a blank for a signature by

435.350 *et seq.* Section 435.470. All statutory references are to RSMo 2016.

Contractor's "Authorized Agent" on behalf of Contractor.[2]

Preprinted Section 1 of the contract, labeled "SCOPE OF WORK" references the hand-written item, "listed on bid package complete home addition[.] See Exhibit "A" 4 pages[.]" (Capitalization adjusted.) Preprinted terms in this section further describe when and how Homeowner must communicate with Contractor about nonconforming work.

Preprinted Section 6 of the contract, labeled "LITIGATION, ATTORNEY'S FEES AND COSTS[,]" states:

> In the event of a breach by either party to this Contract and in the event it shall be necessary for the non-breaching party to retain an attorney or commence legal proceedings in order to enforce the terms of this contract, the breaching party shall be responsible to pay all reasonable attorney's fees and expenses as are actually incurred to enforce this contract. In the event of any claim be [sic] either party, Contractor shall have the option to require binding arbitration to be conducted by a [sic] appropriate and authorized arbitration entity.[³]

■ The parties filed written suggestions in support of and in opposition to the stay motion. After the trial court entered a docket entry denying the stay motion, Appellants filed a "**MOTION FOR RECONSIDERATION OF [APPELLANTS']
MOTION TO STAY PROCEEDINGS**

PURSUANT TO ARBITRATION CLAUSE IN CONTRACT" ("the reconsideration motion") that claimed Homeowner had not met her "burden of proof" to exclude her claims from arbitration. Homeowner filed suggestions in opposition to the reconsideration motion, a hearing was held, and the trial court denied the reconsideration motion in a July 2016 docket entry. This appeal timely followed.[4]

### Analysis

In support of their point on appeal, Appellants argue that where the "agreement ... is silent as to who will conduct the arbitration, the Court will imply such terms" under section 435.360, which permits the appointment of an arbitrator, and Appellants insist the arbitration clause is broad enough to cover Count 2, which asserts negligence-based claims against both Contractor and Mr. Deatherage. Homeowner responds that the arbitration clause is invalid because it "is vague, ambiguous, illusory, and leaves for future determination the essential terms of the purported arbitration [clause.]" Homeowner further maintains that the "arbitration clause does not apply to [her] claim against [Mr.] Deatherage because [he] is not a party to the [contract]." [5]

■ "Under Missouri law, arbitration proceedings are favored and encouraged to further the public policy of dispute resolution without resort to the courts[,]" *Riley v. Lucas Lofts Inv'rs, LLC*, 412 S.W.3d

---

2. The signature of the authorized agent is difficult to read and a typed representation of the name is not a part of the contract.

3. We will refer to the last sentence of section 6 as "the arbitration clause."

4. Although Appellants have identified the denial of the reconsideration motion as the order being appealed, the UAA "does not require in any manner ... that such an appeal must be taken from the *first* order denying an

application to compel arbitration or that an order denying an application to compel arbitration be made with prejudice or otherwise be some type of a *final* determination by the trial court of the issue." *Nicholson v. Surrey Vacation Resorts, Inc.*, 463 S.W.3d 358, 366 (Mo. App. S.D. 2015).

5. Homeowner does not argue that the arbitration clause, if enforceable, would not apply to her negligence claim against Contractor.

285, 290 (Mo. App. E.D. 2013), and an arbitration agreement that provides only one party the option of requiring arbitration is not automatically invalid if the agreement otherwise satisfies mutuality of contract. *See Eaton*, 461 S.W.3d at 434. Thus, even if "one party is more obligated than the other" to participate in arbitration, as long as both parties exchanged consideration for the contract, the agreement "will not be invalidated for lack of mutuality of obligation of the arbitration clause." *Vincent*, 194 S.W.3d at 859 (quotation omitted).

An arbitration "provision is treated like any other contract." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 808 (Mo. banc 2015). "The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent." *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005). We presume that their intent is "expressed by the ordinary meaning of the contact's terms." *Id.*

"If the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement." *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo. App. E.D. 1994). But the reservation of some matters for future agreement does not automatically void a contract. *See, e.g., Smith Moore & Co. v. J.L. Mason Realty & Inv., Inc.*, 817 S.W.2d 530, 531, 532–33 (Mo. App. E.D. 1991) (a joint-venture contract to obtain project financing was not unenforceable because it left certain matters to be performed as "mutually agreeable" to the parties); *Allied Disposal, Inc. v. Bob's Home Service, Inc.*, 595 S.W.2d 417, 421 (Mo. App. E.D. 1980) (agreement to agree on price in future did not result in an invalid contract).

"When an arbitration agreement is valid, but specific provisions are silent or unconscionable, the failure of the terms is remedied by implying the terms from statutes within the [UAA.]" *Hewitt*, 461 S.W.3d at 811 (relying on section 435.360 to replace a designated, but unconscionable arbitrator with a court-appointed arbitrator); *see also Vincent*, 194 S.W.3d at 861 (because "[t]he process of selection of an arbitrator in the contract is unconscionable[,]" the trial court would select the arbitrator under section 435.360).

We disagree with Contractor's assertion that the arbitration clause is "silent as to who will conduct the arbitration" as the phrase "to be conducted by a[n] appropriate and authorized arbitration entity"—even if read only in one's head and not aloud—strikes us as ten words beyond silence and constitutes an attempt to describe the intended qualities of the arbitrator to be chosen. But no other language in the contract suggests that the precise identity of the arbitrator is essential to any other term in the contract. "The essential terms of unperformed promises must be stated; details or particulars need not." *Shellabarger v. Shellabarger*, 317 S.W.3d 77, 82 (Mo. App. E.D. 2010) (internal quotations omitted).

Assuming, *arguendo*, that the arbitrator's precise identity is a matter the parties agreed to agree upon in the future, the arbitration clause does not thereby lose all meaning. Section 435.360 is not limited to remedying missing or unconscionable terms. It allows the court to appoint an arbitrator "if the agreed method fails *or for any reason cannot be followed*[.]" Section 435.360 (emphasis added). Therefore, simply because the selection of an "appropriate and authorized arbitration entity" by the parties to the contract might fail, the basic agreement to allow Contractor to elect arbitration to resolve contract dis-

putes with Homeowner remains enforceable. As a result, the trial court erred in denying a stay as to Count 1, Homeowner's breach of contract claim against Contractor.

■■■■ Count 2 asserts a negligence-based claim for damages against both Contractor and Mr. Deatherage, individually. "Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003) (where a guarantor did not sign the contract containing the arbitration agreement and the contract was not incorporated into the guarantor's agreement, the guarantor was not obligated to arbitrate claims against it).

Where an arbitration clause is broad and contains no express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. *United Steelworkers of Am. [v. Warrior & Gulf Nav. Co.]*, 363 U.S. [574,] 584–585 [80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ]. A motion to compel arbitration of a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.* at [582–83, 80 S.Ct. 1347]. Doubts as to arbitrability should be re-

solved in favor of coverage. *Id.* at [583, 80 S.Ct. 1347].

*Id.* at 429.

Arbitration must be compelled where a tort claim arises directly out of a dispute regarding the terms of the parties' contract. *Greenwood [v. Sherfield ]*, 895 S.W.2d [169,]174 [ (Mo. App. S.D. 1995) ]; *Estate of Athon [v. Conseco Fin. Servicing Corp.]*, 88 S.W.3d [26,] 30 [ (Mo. App. W.D. 2002) ]. At the very least, for a tort claim to be subject to arbitration under a broad arbitration clause, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract. *Estate of Athon*, 88 S.W.3d at 30. Where a tort claim is independent of the contract terms and does not require reference to the underlying contract, arbitration is not compelled. *Id.*

*Nw. Chrysler Plymouth, Inc. v. Daimler-Chrysler Corp.*, 168 S.W.3d 693, 696 (Mo. App. E.D. 2005) (footnote omitted).[6]

■■■ The ability of Contractor to require arbitration under the contract is broad—it is available "[i]n the event of *any claim* be [sic] either party[.]" (Emphasis added.) Further, Homeowner's petition for relief includes breach of contract, and her negligence claim against Contractor relies on the contract as creating the duty Appellants owed Homeowner. Section 1 of the contract specifies certain obligations by Homeowner in response to perceived nonconforming work. Thus, determination of a

---

**6.** By way of illustration, arbitration of tort claims was denied in *Nw. Chrysler* where the petition was not filed on the basis of the parties' contract and the tort claims ("product liability, negligence and *res ipsa loquitur* due to an alleged manufacturing and/or design defect in the [vehicle]") could be resolved without "reference to or construction of some part of the [parties' contract]." *Id.* But in *Estate of Athon*, the tort claims of "Responde-

at Superior, Conversion, Trespass, Interference with Expectancy (Inheritance) Claim, and Unlawful Repossession of Personal Property ... raise[d] issues of [one party's] right to enter the property and repossess [a] mobile home." 88 S.W.3d at 30. The parties' agreement provided "certain rights regarding these issues, and the resolution of the issues requires reference to the [parties' agreement]." *Id.*

tort duty may depend upon a determination of the legal effect of section 1 on that duty. *See Nw. Chrysler*, 168 S.W.3d at 696. As a result, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" a claim by Homeowner against Contractor related to Contractor's allegedly negligent acts in furtherance of the contract. *Dunn*, 112 S.W.3d at 429. Therefore, the trial court erred in denying a stay as to Count 2 insofar as it alleges a negligence claim against Contractor related to Contractor's manner of performance under the contract.

█ In regard to Mr. Deatherage, even if it we assume that he signed the contract as the authorized agent of Contractor, there is no indication in the contract that Mr. Deatherage was bound by the contract in his individual capacity. *Cf. Lawrence v. Beverly Manor*, 273 S.W.3d 525, 529–30 (Mo. banc 2009) (individual who signed nursing home contract as her mother's agent under a power of attorney was not bound by the arbitration agreement between the nursing home and the mother). Therefore, the arbitration clause is not enforceable against Mr. Deatherage in his individual capacity.

█ Nonetheless, under section 435.355.4, a trial court may stay "[a]ny action or proceeding involving an issue subject to arbitration[,] . . . or, if the issue is severable, the stay may be with respect thereto only." Apart from circumstances *requiring* a stay (the case here regarding Contractor), we also observe that a trial court generally possesses discretion to grant or refuse a stay of proceedings, and we will not disturb the trial court's ruling absent an abuse of that discretion. *See U.S. Bank, N.A. v. Coverdell*, 483 S.W.3d 390, 401 (Mo. App. S.D. 2015).

Point 1 is granted. The case is remanded to the trial court, which is directed to: (1) enter an order consistent with this opinion staying proceedings pending arbitration on Counts 1 and 2 insofar as they pertain to Contractor; and (2) determine whether or not a stay of proceedings on Count 2 as to Mr. Deatherage is appropriate.

JEFFREY W. BATES, P.J.— CONCURS

MARY W. SHEFFIELD, C.J.— CONCURS