**JACKSON COUNTY, Missouri,
Respondent,**

v.

**McCLAIN ENTERPRISES,
INC. et al, Defendant**

**Bill House Excavating Co., Appellant.**

**No. WD 66025.**

Missouri Court of Appeals,
Western District.

May 9, 2006.

Jeffrey C. Baker and William P. Denning, Overland Park, KS, for Appellant.

Richard E. McLeod, Kansas City, MO, for Respondent.

Steven F. Coronado, Kansas City, MO, for Defendant.

Before RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and ROBERT G. ULRICH, JJ.

ROBERT G. ULRICH, Judge.

Bill House Excavating Co. (Excavating) appeals from the order of the Jackson County Circuit Court overruling its motion to compel arbitration. In its sole point on appeal, Excavating claims the trial court erred in overruling its motion to compel arbitration because a valid and enforceable agreement to arbitrate existed. The order is reversed, and the matter is remanded to the trial court with directions.

## Facts

On June 6, 2005, Jackson County filed an action for trespass and conversion against Excavating and McClain Enterprises, Inc. (McClain).[1] The petition alleged that Excavating, as the agent of and at the direction of McClain, entered upon Little Blue Trace Park, property belonging to Jackson County, and removed approximately 73,778 cubic yards of soil from the site, digging a pit approximately two acres in size. The petition further alleged that the removed dirt was used as fill dirt in a housing development owned by McClain. Finally, the petition alleged that neither Excavating nor McClain were authorized by Jackson County to enter upon the land or remove the dirt.

Excavating filed its answer on July 13, 2005, and generally denied the allegations contained in the petition. Excavating's answer also denied that the Jackson County Circuit Court had subject matter jurisdiction over the matter because of an agreement between the parties to submit the matter to arbitration. On July 12, 2005, Excavating filed a motion to compel arbitration and suggestions in support of the motion. Excavating sought to compel arbitration pursuant to section 435.350,[2] and based upon the acceptance by the parties of the terms contained in an April 19, 2005, letter. The suggestions in support of the motion alleged that, after the dirt had been removed from Little Blue Trace Park, counsel for Jackson County sent a letter to both Excavating and McClain offering to submit the dispute to arbitration and articulating terms. The letter was attached to the suggestions and stated the following:

Dear Sirs:

In an effort to resolve the County's claim against you, for damage done to Jackson County parkland in the Little Blue Park at Saddle Ridge Estates, the County is offering to enter into an agreement under the terms contained in this letter to submit the dispute to binding arbitration before retired Circuit Judge John Moran.

The arbitration process as contemplated will proceed as follows:

1. McClain is not a party to this appeal.

2. Section 435.350, RSMo 2000, is a part of the Missouri Uniform Arbitration Act. It states in relevant part:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

1. The County will submit a brief statement of its claim, setting forth all legal causes of action available to us.

2. Each putative defendant will submit a written answer setting forth any legal defenses.

3. Parties will exchange all documents concerning this matter within ten days of the receipt of the answer as contemplated in Federal Rule of Civil Procedure 26.

4. Subsequent to the exchange of documents each party shall have the right to obtain up to five (5) depositions under oath from witnesses or parties to the action. Additional depositions may be obtained upon a showing of necessity within the discretion of Judge Moran.

5. The arbitration meeting shall be held in an open and available public forum accessible to members of the general public, the press, and any interested observers. All documents, exhibits and depositions submitted as evidence in the meeting shall be available to the public.

6. The arbitrator shall prepare written findings of facts, conclusions of law and order pertaining to the following issues in the same manner as a trial before the Court:

A. Each of the County's causes of action;

B. The appropriateness of any defense raised and proven;

C. The calculation of damages necessary to make the County whole;

D. The application of Section 49.490 R.S.Mo. that provides for quadruple damages.

7. Any damages awarded must be paid within 30 days after the decision or Jackson County shall have the right to enforce the arbitrator's award as a judgment of a Court of Law.

If this suggestion is satisfactory, please contact me immediately. If we do not have a signed agreement for binding arbitration under these terms and conditions, within ten days of the date of this letter, we will file a suit fairly soon thereafter.

Sincerely,

[Jackson County Counselor]

The suggestions in support of the motion further alleged that both Excavating and McClain accepted the offer within ten days; the letters of acceptance were also attached to the suggestions. Excavating argued that, upon acceptance, there was a binding and enforceable agreement to arbitrate.

Jackson County filed suggestions in opposition to the motion to compel arbitration on August 25, 2005. Jackson County claimed that the essential term in the agreement to arbitrate set forth in the April 29, 2005, letter was that retired Circuit Judge John Moran serve as the arbitrator. After the offer was accepted, the parties learned that Judge Moran would not hear the arbitration case. Jackson County asserted that because an essential term of the contract, that Judge Moran serve as arbitrator, could not be met, the contract was unenforceable.

Excavating filed a response to the suggestions in opposition to the motion to compel on August 6, 2005. Excavating asserted that Judge Moran serving as arbitrator was not an essential term of the contract and that the agreement to arbitrate was not conditioned upon Judge Moran's serving as arbitrator. It further stated that when Jackson County learned that Judge Moran would not serve as the arbitrator, Jackson County did not notify the parties that the arbitration could not proceed. Instead, Jackson County continued

to discuss the option of using another individual as an arbitrator in the dispute. Attached to the response was a letter from Excavating to both Jackson County and McClain purporting to memorialize a conversation the parties had concerning the use of a substitute arbitrator. The letter stated that counsel for Jackson County was going to consult with the Jackson County legislature to determine whether the legislature was agreeable to using the substitute arbitrator and requested that counsel for Jackson County contact the other parties and inform them whether the legislature approved the substitute arbitrator.

On September 20, 2005, the Jackson County Circuit Court summarily overruled Excavating's motion to compel arbitration. The order did not include findings of fact and conclusions of law. Excavating filed its timely notice of appeal.

### Jurisdiction

■ Jackson County moved to dismiss the appeal. It claimed that the order overruling the motion to compel arbitration was not an appealable final judgment as it was not denominated "judgment" as required by Rule 74.01(a). Excavating's response to the motion to dismiss argued that section 435.440.1 granted the right to

appeal from the denial of a motion to compel arbitration, which takes precedence over the necessity of a final judgment. The motion was taken with the case, and briefs were subsequently filed. In its jurisdictional statement, Excavating asserts that overruling its motion to compel arbitration is appealable pursuant to section 435.440.1 and that this court has jurisdiction. Jackson County's jurisdictional statement is comprised of the following sentence: "Respondent agrees with Appellant's jurisdictional statement."

■ Regardless whether the parties agree that this court has jurisdiction, an appellate court must determine *sua sponte* whether it has jurisdiction to entertain an appeal. *Lake Osage Condo. Ass'n, Inc. v. Prewitt*, 179 S.W.3d 331, 335 (Mo.App. S.D.2005). "The right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427 (Mo. banc 2003). Section 512.020 [3] governs appeals and states that an appeal is only allowed from a final judgment of the trial court. *H.J. Gruy & Assocs., Inc. v. Big E Oil Co.*, 133 S.W.3d 541, 541 (Mo.App. E.D.2004). "If the order of the trial court was not a final judgment, this Court lacks jurisdiction and the appeal must be dismissed."

---

**3.** Section 512.020, RSMo Cum.Supp.2005, states:

Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:

(1) Order granting a new trial;

(2) Order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers, or dissolving an injunction;

(3) Order granting or denying class action certification provided that:

(a) The court of appeals, in its discretion, permits such an appeal; and

(b) An appeal of such an order shall not stay proceedings in the court unless the judge or the court of appeals so orders;

(4) Interlocutory judgments in actions of partition which determine the rights of the parties; or

(5) Final judgment in the case or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case.

*City of St. Louis v. Hughes,* 950 S.W.2d 850, 852 (Mo. banc 1997). The Missouri legislature has defined a "judgment" as "the final determination of the right of the parties in an action." *Id.* at 853; § 511.020.

The Missouri Constitution empowers the Missouri Supreme Court to "establish rules relating to practice, procedure and pleadings for all courts . . . which shall have the force and effect of law." *Hughes,* 950 S.W.2d at 853; Mo. Const. art. V, § 5. Pursuant to this provision, the Missouri Supreme Court has adopted rules of civil procedure. *Hughes,* 950 S.W.2d at 853. Rule 74.01(a) [4] defines what constitutes a judgment. *Id.* Rule 74.01(a) states that "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." A document not denominated "judgment" is not a final judgment and is not appealable under section 512.020. *Hughes,* 950 S.W.2d at 853.

Section 512.020 governs appeals generally. *Crack Team USA, Inc. v. Am. Arbitration Ass'n,* 128 S.W.3d 580, 581 (Mo.App. E.D.2004). Section 435.440.1,[5] a part of the Missouri Uniform Arbitration Act (MUAA),[6] specifically governs the appealability of arbitration awards. *Crack Team USA, Inc.,* 128 S.W.3d at 581. It expressly grants the right to appeal orders denying an application to compel arbitration. *Whitney v. Alltel Commt'ns, Inc.,* 173 S.W.3d 300, 306 (Mo.App. W.D.2005).

"[W]hen the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general." *Crack Team USA, Inc.,* at 581. Section 435.440.1 is a "special statute" that takes precedence over the requirements in Rule 74.01. *Whitney,* 173 S.W.3d at 306. Further, an appeal from a denial of a motion to compel arbitration is proper if it is authorized under either section 512.020 or section 435.440. *Korte Constr. Co. v. Deaconess Manor Ass'n,* 927 S.W.2d 395, 398 (Mo.App. E.D.1996)(citing *Young v. Prudential Sec.,* 891 S.W.2d 842 (Mo.App. E.D.1995) and *McClellan v. Barrath Constr. Co.,* 725 S.W.2d 656, 658 (Mo.App. E.D.1987)). *See also Madden v. Ellsper-*

---

4. Rule 74.01(a) states:
   **Judgment**
   **(a) Included Matters.** "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated "judgment" or "decree" is filed. The judgment may be a separate document or entry on the docket sheet of the case. A docket sheet entry complying with these requirements is a judgment unless the docket sheet entry indicates that the court will enter the judgment in a separate document. The separate document shall be the judgment when entered.

5. Section 435.440.1, RSMo 2000, states:
   1. An appeal may be taken from:
   (1) An order denying an application to compel arbitration made under section 435.355;

6. Section 435.465.1 states that the MUAA applies to written agreements between commercial persons or between commercial persons and "those with whom they contract other than commercial persons." Commercial persons are defined as "all persons and legal entities, excluding any government or governmental subdivision or agency." § 435.465.2. Per the definition, only a governmental entity cannot be a commercial person. *Id.* Thus, the MUAA applies to contracts between two commercial persons or between a commercial person and a governmental entity. *Raytown Consol. Sch. Dist. No. 2 v. Am. Arbitration Ass'n,* 907 S.W.2d 189, 192 (Mo.App. W.D. 1995). It does not apply to contracts between two governmental entities. *Id.* The agreement at issue in this case was between Excavating and McClain, commercial persons, and Jackson County, a governmental entity. The MUAA applies to this agreement.

*mann,* 813 S.W.2d 51, 53 (Mo.App. W.D. 1991). These cases have determined that, when Rule 74.01 conflicts with section 435.440.1, section 435.440.1 prevails.[7]

■■■ The trial court's ruling, denying Excavating's motion to compel arbitration, was not denominated "judgment." Instead, it was denominated "Order." The trial court's order is not appealable pursuant to section 512.020. Section 435.440.1 states that an appeal may be taken from "an *order* denying an application to compel arbitration." (emphasis added). The trial court's ruling is appealable pursuant to section 435.440.1, and this court has jurisdiction.[8]

### Analysis

■■■ In its sole point on appeal, Excavating argues that the trial court erred in overruling its motion to compel arbitration. It claims that a valid and enforceable agreement existed to arbitrate the dispute between Jackson County and both McClain and Excavating. It argues that Judge Moran's service as an arbitrator was not an essential term. Excavating claims that a substitute arbitrator should be appointed pursuant to section 435.630 or section 5 of the FAA. It states that the

conduct of the parties after learning that Judge Moran would not serve as arbitrator, namely that they discussed using another arbitrator, demonstrates that Judge Moran's service as an arbitrator was not an essential term of the agreement. Jackson County argues, to the contrary, that Judge Moran's service as an arbitrator was the only essential term and that the contract is unenforceable because the essential term cannot be fulfilled.

■■■ Under both the MUAA or the FAA, "before a court may grant a party's motion to compel arbitration, it must decide whether the agreement containing the arbitration provision is valid and legally binding." *Estate of Burford ex rel. Bruse v. Edward D. Jones & Co., L.P.,* 83 S.W.3d 589, 592 (Mo.App. W.D.2002). If the arbitration agreement is valid and legally binding, the party moving for an order compelling arbitration is entitled to such an order. *Id.* at 592–93. Ordinary rules of contract interpretation are used to determine whether a valid agreement to arbitrate exists. *Swain v. Auto Servs., Inc.,* 128 S.W.3d 103, 107 (Mo.App. E.D.2003).

The interpretation of a contract is a question of law. *Helterbrand v. Five Star*

---

**7.** The Southern District has not followed this rule when the motion to compel arbitration does not encompass all parties and all claims. In *Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.,* 904 S.W.2d 37, 39 (Mo.App. S.D.1995), the Southern District found that it lacked jurisdiction over the denial of a motion to compel arbitration because the judgment was not final under Rule 74.01 in that it did not dispose of all claims against all parties. In *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London,* 963 S.W.2d 392, 395–96 (Mo.App. W.D.1998), this court declined to follow *Abrams.* In *Garwood v. Port Arrowhead Marina, Inc.,* 996 S.W.2d 153, 155–56 (Mo.App. S.D.1999), the Southern District declined to follow cases from the Eastern and Western District insofar as they were inconsistent with *Abrams. See also Dunn v. Sec.*

*Fin. Advisors, Inc.,* 151 S.W.3d 140, 142–43 (Mo.App. W.D.2004).

**8.** If an agreement to arbitrate exists, this court need not determine whether the Federal Arbitration Act (FAA) applies to it. Even if the FAA does apply, section 435.440.1, a state procedural rule contained within the MUAA, may be applied to grant this court jurisdiction so long as the substantive rights granted by the FAA are not defeated. *Whitney,* 173 S.W.3d at 306–07. "Section 435.440.1 clearly does not serve to defeat any of the rights granted by Congress under the FAA and, in fact, is wholly consistent with the provisions of the FAA allowing for an appeal from the denial of a motion to compel arbitration." *Id.*

*Mobile Home Sales, Inc.,* 48 S.W.3d 649, 658 (Mo.App. W.D.2001). Appellate review is de novo. *Id.* The cardinal principle guiding contract interpretation is that the intention of the parties must be ascertained and given effect. *Id.* The plain, ordinary, and usual meaning of a contract's words are used, and the whole document is considered. *Id.* "Where a written contract is unambiguous and complete on its face, parol evidence may not be introduced to vary or contradict the terms of the agreement." *Id.* "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms." *Id.* The mere fact that the parties disagree over a contract's meaning does not render the contract ambiguous. *Id.*

When a contract is ambiguous, "use of extrinsic evidence for interpretation is proper." *Yerington v. La–Z–Boy, Inc.,* 124 S.W.3d 517, 522 (Mo.App. S.D.2004). "In such an instance, extrinsic or parol evidence is admissible to explain the positions of the parties at the time the agreement was made so the court may better understand the force and application of the language employed." *Id.* (quote marks and citation omitted). "Stated differently, when a contract is ambiguous, parol evidence can be used to show the surrounding circumstances and the relationship of the parties as indicating their real intent and the meaning of the contract, and also to show the practical construction placed upon the contract by the parties." *Id.* (quote marks and citation omitted). The aim is to discern the real intention of the parties. *Id.*

Whether Judge Moran's service as an arbitrator is an essential term of the agreement to arbitrate, embodied by the April 19 letter and the responsive acceptance letters of Excavating and McClain,

is ambiguous. The offer was to "submit the dispute to binding arbitration before retired Circuit Judge John Moran." A reasonable interpretation of this sentence could be that Jackson County's offer was to arbitrate before Judge Moran only. Yet, the letter sets forth numbered terms, and having Judge Moran serve as arbitrator is not one of the terms. A reasonable understanding is that the numbered terms are the essential terms, and Judge Moran's service as an arbitrator was preferred or a suggestion but not essential. Because the agreement is ambiguous, evidence is needed to demonstrate the intention of the parties and the practical construction they placed upon the agreement. *Id.* The trial court summarily denied the motion to compel arbitration. It did not conduct a hearing or consider extrinsic evidence. Although Excavating attached certain correspondence to its motion as evidence of the parties' intention, documents "attached to motions filed with the trial court are not evidence and are not self-proving." *Powell v. State Farm Mut. Auto. Ins. Co.,* 173 S.W.3d 685, 689 (Mo. App. W.D.2005). Thus, no evidence was presented from which the trial court could ascertain the parties' intentions and resolve the ambiguity.

Therefore, the case is remanded to the trial court so that a hearing on the motion to compel arbitration can be conducted. Following the hearing, the trial court is directed to determine whether Judge Moran's service as an arbitrator was an essential term to the contract. If it was, the contract is unenforceable, and no enforceable agreement to arbitrate exists. If the trial court finds that Judge Moran's service as an arbitrator was not an essential term, an enforceable arbitration agreement exists, and the court, in accordance with section 435.355, will order arbitration, appoint an arbitrator, and dismiss Jackson

County's suit for lack of subject matter jurisdiction.

All concur.